**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| JUDYTH RICKER<br>863 Bridle Way<br>Davidsonville, Maryland 21035, | :<br>:<br>: |
| Plaintiff, | : |
| v. | : |
| ANNE ARUNDEL DERMATOLOGY, | : |
| Defendant. | :   Case No_____ |
| Serve on: | : |
| Angela R. Peterman, M.D.<br>877 Baltimore-Annapolis Blvd<br>Suite 100<br>Severna Park, Maryland 21146 | :<br>:<br>: |
| | : |

...oooOooo...

## COMPLAINT

NOW COMES Plaintiff Judyth Ricker, by and through her attorneys, D. H. Andreas Lundstedt, and the Law Office of Andrew M. Dansicker, LLC, and hereby files this Complaint against Defendant Anne Arundel Dermatology for age discrimination and harassment, retaliation, and for violation of Maryland's Fair Employment Practices Act ("FEPA"), and in support thereof states the following:

## THE PARTIES

1.  Plaintiff Judyth Ricker is a resident of Davidsonville, Anne Arundel County, Maryland, and is a former employee of AAD.

2.  Defendant Anne Arundel Dermatology ("AAD") provides dermatology-related

treatment and other services to patients throughout the state of Maryland as well as in several states nationwide, employing in excess of five-hundred employees.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this Court pursuant to 29 U.S.C. § 621 et. seq. as the case arises under federal law, the Age Discrimination in Employment Act ("ADEA"), and personal jurisdiction is also proper in this Court because Defendants transact extensive business in Maryland and the events giving rise to this litigation took place in Maryland.

4. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the District of Maryland, Northern Division.

## FACTS

5. Judyth Ricker is a sixty-nine-year-old woman formerly employed as a Phototherapy Registered Nurse at Anne Arundel Dermatology Weems Creek at Annapolis, Maryland.

6. Ms. Ricker graduated Cum Laude with a Bachelor of Science in Nursing in 1974.

7. Ms. Ricker was hired by AAD on December 8, 2009.

8. Ms. Ricker was the oldest of four nurses in her department, under the leadership of Dr. Angela Peterman.

9. Ms. Ricker excelled in her career, was loved by patients, and she was consistently praised and showered with accolades for her stellar work performance throughout her employment with AAD.

10. In early 2019, AAD hired Tina DiPaola, less than thirty years old, as a registered nurse.

11. Over time, Ms. Ricker started noticing a distinct change in how she was being

treated.

12. During the Fall 2019, Ms. Ricker became the target of unwarranted disparaging treatment, including but not limited to being subjected to overly scrutinized work, being yelled at, being falsely accused of not performing her job or not performing it accurately, being left out of meetings and work-related discussions, and Ms. Ricker was told she should retire.

13. Most of the harassment was orchestrated by office manager Michelle Ashby, who also hired Tina DiPaola.

14. At a staff meeting on November 5, 2019, Ms. Ricker was targeted by Ms. Ashby who was verbally abusive and accusatory of Ms. Ricker and humiliated Ms. Ricker in front of other employees.

15. No other person was verbally berated at the meeting.

16. On the same date, Ms. Ashby also yelled at Ms. Ricker that certain paper files had to be cleaned out and the only paper allowed to remain in certain charts was the patient treatment flow sheet. Ms. Ricker complied with the directive.

17. On November 6, Ms. Ricker sent an email to Ms. Ashby, expressing concern about the stressful events that were transpiring at work.

18. On November 7, Ms. Ricker was called into a meeting with Nicole Cunningham, Regional Director of Operations, and Ms. Ashby. At that time, Ms. Ricker was assured by Ms. Cunningham that they were not planning on letting her go and that after ten years of employment her personnel file was clean.

19. Ms. Ricker, who was suffering from the ongoing harassment, decided to use the opportunity to speak up and inform the two supervisors during the meeting what was occurring in the workplace, including that Ms. DiPaola had told Ms. Ricker she should retire.

20. The following day, on November 8, Ms. Ricker sent an email to Ms. Cunningham and Dr. Peterman that Ms. Ricker was being harassed.

21. Ms. Cunningham responded that she appreciated the follow up to the meeting and stated that a meeting would be scheduled the following week to discuss more.

22. On November 9, Ms. Ricker received an email from Dr. Peterman stating she was sorry that Ms. Ricker was upset but that she could understand why Ms. Ricker was upset.

23. The meeting that Ms. Cunningham represented would be scheduled never occurred.

24. On November 18, Ms. Ashby and Ms. Cunningham unexpectedly presented Ms. Ricker with a notice of corrective action suspiciously dated November 12, merely four days after Ms. Ricker sent an email complaining of harassment.

25. The corrective action stated that Ms. Ricker had violated a safety regulation by cleaning out patient folders.

26. The corrective notice ignored that Ms. Ricker had been instructed by Ms. Ashby to clean out patient folders.

27. Irrespective of the fact that Ms. Ricker was instructed to clean out patient folders, any such cleaned out folders were retrieved and the information that was recorded on the documentation had been saved elsewhere prior to Ms. Ricker cleaning out the folders.

28. Ms. Ashby pressured Ms. Ricker to sign the discipline by the end the day.

29. Ms. Ricker emphatically protested that the discipline was unwarranted and that the discipline was based on false accusations. Ms. Ricker did not sign the document.

30. Ms. Ashby angrily responded "now that HR is involved you can contact them if you need anything."

31. Ms. Ashby's reference to HR being involved directly referred to the fact that Ms. Ricker had complained of harassment.

32. The following day, on November 19, Ms. Ricker emailed Ms. Ashby and Ms. Cunningham that she had followed Ms. Ashby's directive regarding cleaning out patient folders and that she had not violated any company policy.

33. On November 20, Ms. Ricker sent an email to HR Manager Lori Knoche, stating that Ms. Ricker had been subjected to illegal workplace harassment and retaliation.

34. Ms. Ricker stated in the email that she had complained to supervisors on November 6 and November 8 regarding continuous harassment and that she had been disciplined shortly thereafter.

35. On November 21, Vice President of HR, Jaime Strickland, responded to Ms. Ricker's complaint requesting information from Ms. Ricker, which Ms. Ricker provided.

36. Ms. Strickland expressed thanks for Ms. Ricker sending the information, adding that management would continue to investigate Ms. Ricker's complaint and concerns.

37. Nobody ever contacted Ms. Ricker about her complaints or concerns and no investigation was conducted, but Ms. Ricker continued to work as usual.

38. On December 9, 2019, Ms. Ashby called Ms. Ricker to a meeting where Ms. Ricker was told she was being discharged due to allegedly discarding patient records.

39. Ms. Ricker has suffered severe emotional distress as a result of the illegal termination, including sleeplessness, increase in pain, inability to eat, loss of appetite, weight loss, and crying bouts.

40. On July 27, 2020, Ms. Ricker filed a timely age discrimination and retaliation

charge with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the Maryland Commission on Civil Rights ("MCCR").

41. On May 17, 2021, the EEOC issued a Right to Sue Letter to Ms. Ricker which the EEOC mailed on May 20, 2021. Ms. Ricker is filing this Complaint timely with the Court within 90 days of receipt of her Right to Sue Letter from the EEOC on May 24, 2021.

42. Therefore, AAD's conduct violates Ms. Ricker's legally protected rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq., and there simply is no excuse for its blatant violation.

## COUNT I – ADEA

43. Plaintiff repeats and realleges all of the allegations in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

44. Ms. Ricker is a member of a protected class, an employee over the age of 40, entitled to protection against age discrimination.

45. During all relevant times, Defendant was Ms. Ricker's "employer" for purposes of the ADEA.

46. Defendant AAD discriminated against Ms. Ricker by treating her differently than other, similarly-situated employees who were under the age of 40, and later terminating her employment for pretextual reasons.

47. AAD had knowledge of the harassment of Ms. Ricker and had a duty to reasonably respond to Ms. Ricker's complaints by remedying the concerns that were brought to their attention, but AAD failed to do so.

48. Plaintiff has suffered substantial damages as a direct and proximate result of

6

Defendant's unlawful and discriminatory conduct, including emotional distress and loss of wages and benefits.

49. WHEREFORE, Plaintiff demands judgment in an amount greater than three hundred thousand dollars ($300,000.00) against Defendants in compensatory damages, including back pay and front pay, punitive damages, attorney's fees, interest and costs, and any and all other relief deemed appropriate by this Court.

## COUNT II
## FEPA – AGE DISCRIMINATION

50. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

51. During all relevant times, Defendant AAD was Ms. Ricker's "employer" within the meaning of FEPA, Md. State Govt. Code Ann., Section 20-601(d).

52. During all relevant times, Ms. Ricker was an "employee" within the meaning of FEPA, Md. State Govt. Code Ann., Section 20-601(c).

53. Ms. Ricker is a member of a protected class entitled to protection against age discrimination and harassment under Md. State Govt. Code Ann., Section 20-606, et seq.

54. Defendant AAD discriminated against and harassed Ms. Ricker by treating her differently than other, similarly-situated employees who were younger than Plaintiff, and later terminating her employment for pretextual reasons.

55. AAD had knowledge of the harassment of Ms. Ricker and had a duty to reasonably respond to Ms. Ricker's complaints by remedying the concerns that were brought to their attention, but AAD failed to do so.

56. Plaintiff has suffered substantial damages as a direct and proximate result of

Defendant's unlawful and discriminatory conduct, including emotional distress and loss of wages and benefits.

57. WHEREFORE, Plaintiff demands judgment in an amount greater than three hundred thousand dollars ($300,000.00) against Defendants in compensatory damages, including back pay and front pay, punitive damages, attorney's fees, interest and costs, and any and all other relief deemed appropriate by this Court.

## COUNT III -- RETALIATION

58. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

59. Ms. Ricker is a member of a protected class, an employee over the age of 40, entitled to protection against age discrimination.

60. During all relevant times, AAD was Ms. Ricker's "employer" for purposes of ADEA.

61. Ms. Ricker engaged in protected activity under ADEA and Maryland law when she complained to AAD about the illegal workplace discrimination and harassment.

62. After filing complaints, Ms. Ricker was subjected to adverse action when the Defendant discharged her for reasons that are pretextual.

63. The Defendant's adverse actions were causally connected to her discrimination and harassment complaints.

64. Ms. Ricker has suffered substantial financial and emotional distress damages as a direct result of the discriminatory and retaliatory conduct of AAD.

65. WHEREFORE, Plaintiff demands judgment in an amount greater than three hundred thousand dollars ($300,000.00) against Defendants in compensatory damages, including

back pay and front pay, punitive damages, attorney's fees, interest and costs, and any and all other relief deemed appropriate by this Court.

Dated: August 16, 2021                              Respectfully Submitted,

                                                                                               _____/s/_____
                                                                                              D. H. Andreas Lundstedt (Bar # 28620)
                                                                                              Law Office of Andrew M. Dansicker, LLC
                                                                                              Executive Plaza II, Suite 705
                                                                                              11350 McCormick Road
                                                                                              Hunt Valley, Maryland 21031
                                                                                              Telephone: 410-771-5668
                                                                                              Facsimile: 410-927-7390

                                                                                             *Counsel for Judyth Ricker*

## **PRAYER FOR JURY TRIAL**

Plaintiff Judyth Ricker hereby requests a jury trial.

_____/s/_____
D. H. Andreas Lundstedt